```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION
```

ALMA JEAN WALTON,            )
                             )
          Plaintiff,         )
                             )   Cause No. 2:17-CV-271
     vs.                     )
                             )
MERRILLVILLE POLICE          )
DEPARTMENT and JOSEPH        )
PETRUCH in his official      )
capacity as Chief of         )
Police,                      )
                             )
          Defendants.        )

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss, filed by Defendant, Merrillville Police Department and Chief Joseph Petruch, on August 24, 2017 (DE #17). For the reasons set forth below, the motion (DE #17) is **GRANTED**. Plaintiff's federal claims (in Count I) are **DISMISSED WITH PREJUDICE**, and her state claims (Counts II-V) are **REMANDED** back to the Lake Circuit Court for further proceedings.

BACKGROUND

This case was removed to this Court on June 23, 2017. Plaintiff, Alma Jean Walton, alleges that she was raped the night of November 10, 2014, and that the Merrillville Police Department and Joseph Petruch, in his official capacity as Chief of Police, failed to properly investigate her case. In her amended complaint,

she states a claim pursuant to 42 U.S.C. § 1983 for violation of her constitutional rights to due process and equal protection (Count I), as well as state constitutional violations (Count II), negligence (Count III), "privacy" (Count IV), and defamation (Count V).

Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed a response on September 15, 2017 (DE #24), and Defendants filed a reply on September 22, 2017 (DE #25). Consequently, this motion is fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must

be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Facts

Plaintiff is a 59-year old African American female, who alleges she was forcibly raped in her home in Merrillville, Indiana, the night of November 10, 2014. (Am. Compl. ¶¶ 5-6.) She alleges the attack occurred while she was sleeping, and she was "unable to move and felt powerless in stopping her attacker." (*Id.* ¶ 7.) According to Plaintiff, when she woke the next morning, she was physically injured, was experiencing pain and seepage, bruising, and in extreme pain in her breasts. (*Id.* ¶ 8.) She went to South Suburban Hospital in Country Club Hills, Illinois, and had an exam and rape kit performed. (*Id.* ¶ 9.)

That same morning, Plaintiff called the Merrillville Police Department and reported that she had been raped and attacked, and although she was told officers would be there within 2-3 days, she

alleges the police officers did not come to her home to make a report. (*Id.* ¶ 11.)

On approximately November 24, 2014, Plaintiff again called the Merrillville Police Department to follow up, but she alleges they still had not investigated the allegations. (*Id.* ¶ 12.) Plaintiff claims she continued to live in fear that the attacker would return. (*Id.* ¶ 15.) On December 5, 2014, Plaintiff called the Police Department "to report that she believed one of the other tenants on the property was her attacker and asked that they investigate her allegations and that they test the rape kit." (*Id.* ¶ 16.)

Not until after Plaintiff went to the Merrillville Police Department's station to ask about the status of the investigation on December 9, 2014, did an officer get dispatched to her residence to investigate the incident that same day. (*Id.* ¶ 17.) That police report is attached to the amended complaint, and indicates that Plaintiff believes the same person "had been entering her apartment while the security system is armed and disturbing things in her apartment. . . [she] also reported that she believes that same individual followed her to the Best Western Hotel in Oak Forest IL and broke off the sun visor inside her vehicle." The Officer found "[t]here was no forced entry to Walton's home of [sic] vehicle." (DE #7 Ex. A.)

In January 2015, Plaintiff was advised by the South Suburban

4

Hospital that the Police Department was in possession of the rape kit gathered in October 2014, but it would take six months to process. (Am. Compl. ¶¶ 18-19.)

She sent a letter to the Police Department on September 7, 2015, inquiring about the rape kit. (*Id.* ¶ 20.) On September 24, 2015, Joseph Petruch, Chief of Police, sent a letter in return (attached to the amended complaint as Exhibit C), stating:

> Upon receiving the incident report it was processed by the Department through standard daily operating procedure. The Commander of Detective's reviewed the written report and assigned it to Detective Fields.
>
> Detective Fields followed his investigating training concerning this incident. During this investigation, with review of original claims and the Sane's report from Advocate South Suburban Hospital, it was confirmed there showed no signed or evidence to substantiate the claim.
>
> The investigation by Detective Fields continued with him contacting your daughter, and advising her of the hospital's concerns for your mental health. With the investigation complete and your daughter advised, he closed his report investigation.
>
> This would conclude any further investigation with Detective Field's recommendation of no evidentiary evidence of a crime.

(DE #7 Ex. C.)

Plaintiff alleges that to date, she has never been given the results of her rape kit test or provided with any documentation to substantiate whether it was processed. (Am. Compl. ¶ 24.) She believes it was never processed. (*Id.* ¶ 25.)

Attached Documents

First, the Court must cover which documents are proper to consider in ruling on this motion to dismiss. For purposes of a Rule 12(b)(6) motion, the pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Thus, all of the exhibits attached to the amended complaint (including the Merrillville Police Department incident report (Ex. A), and the letter dated September 24, 2015 from the Chief of Police (Ex. C)), may be considered by this Court.

The only other document at issue is Exhibit B to the Defendants' motion to dismiss, which is an affidavit by Joseph Petruch, Chief of Police. (DE #18-3.) "Documents referred to in, but not attached to, a plaintiff's complaint that are central to its claim may be considered in ruling on a Rule 12(b)(6) motion if they are attached to the defendant's motion to dismiss." *Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 n.3 (7th Cir. 1997); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429,431-32 (7th Cir. 1993). In this case, the affidavit is not attached or referred to in the complaint. No party requested that this Court convert this to a motion for summary judgment; and this Court does not intend to do so. As such, this Court excludes from consideration Petruch's affidavit.

Federal Claims

The amended complaint states a claim against Defendants Merrillville Police Department and Joseph Petruch, under 42 U.S.C. § 1983, for violation of Plaintiff's constitutional rights pursuant to the due process clause and equal protection clause (Count I).[1] The wording of the complaint is important, and thus is included, in pertinent part:

> 27. At all times relevant herein, Defendants acted under the color of authority of the State.
>
> 28. Merrillville Police Department had policies and procedures set in place in accordance with the Lake County Indiana Police Department and the Lake County Sexual Assault Response Team. [Exhibit E]. Said document has been signed by every police department in Lake County; including, but not limited to, Defendant, Chief of Police, Joseph Petruch.
>
> 29. Defendants knew that Plaintiff had a rape kit gathered as evidence of sexual assault, and Defendants did not take steps to properly investigate the allegation of forcible rape that Plaintiff reported.
>
> 30. Defendants had a duty to investigate diligently the allegations and to submit the rape kit for testing and processing.
>
> 31. At all times, Defendants acted with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard

---

[1] A municipality's police department is "not a 'person' under Section 1983" and may not be sued as such. *Sanders v. Town of Porter Police Dep't*, No. 2:05-CV-377, 2006 WL 2457251, at *3 (N.D. Ind. Aug. 22, 2006). However, by bringing section 1983 claims against Chief Petruch in his official capacity, Plaintiff has brought suit against the proper defendant, the Town of Merrillville. *Yeksigian v. Nappi,* 900 F.2d 101, 103-04 (7th Cir. 1990) ("A suit against a municipal officer in his official capacity is construed as a suit against the municipality.").

> deprived Plaintiff of rights and/or privileges secured by the constitution, including, but not limited to:
>
> (a) Defendants violated Plaintiff's Due Process Clause property interests in her DNA samples, which had been allegedly stored at the Merrillville Police Department's facility, and her right to redress in the courts, by failing to investigate and by failing to submit the rape kit for testing and processing.
>
> 32. Defendants have a widespread policy, practice, or custom of how to process a report of rape, although not authorized by written law or express statute, the policy is well settled to constitute a custom or usage with the force of law.
>
> 33. Defendants intentionally treated Plaintiff differently based solely on her race and gender.
>
> 34. Had the report of assault been made by a Caucasian woman or a male, the allegations would have no doubt been investigated in an efficient and timely manner.
>
> 35. Defendants conduct violates the due process and equal protection clause under 42 USCS § 1983.

(Am. Compl. ¶¶ 27-35.)

Denial of Access to Courts

Defendants argue that Plaintiff has failed to state a claim for violation of Constitutional rights under the due process clause, because she has not stated a claim for a constitutional deprivation. More specifically, they contend there is no due process right to a proper police investigation, and that Plaintiff does not allege a sufficient claim for judicial redress. Although

8

Plaintiff alleges "she believed one of the other tenants on the property was her attacker," (Am. Compl. ¶ 16) she argues that she could not "sue the man that raped her because she does not have that information which is identified in her rape kit." (DE #24 at 2.)

"A plaintiff may bring a valid claim for relief under § 1983 if he can show that someone acting under color of state law deprived him of a right protected by the Constitution." *Buchmeier v. City of Berwyn*, No. 14 C 6750, 2015 WL 4498742, at *2 (N.D. Ill. July 23, 2015) (citation omitted). Indeed, the First and Fourteenth Amendment safeguard a person's right to seek legal redress for claims that have a reasonable basis in law and fact. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). Thus, if a state actor interferes with an individual's right of court access, it can potentially be actionable as a deprivation of constitutional rights under section 1983. *Buchmeier*, 2015 WL 4498642, at *2 (citing *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). There is a requirement that judicial access be "adequate, effective, and meaningful." *Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015) (quoting *Bounds*, 430 U.S. at 822). Moreover, the Seventh Circuit has held that "when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez v. Hernandez*, 60 F.3d 325, 328

9

(7th Cir. 1995); *see also May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000) ("[t]o prove a violation of this right, a plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury."). Because private plaintiffs do not have a right to compel the government to file criminal charges against other individuals, *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986), the only right on which Plaintiff's denial of access claim could be based is her right to pursue a civil action. *See Buchmeier*, 2015 WL 4498742, at *3.

On the other hand, the Seventh Circuit also has very clearly stated that a plaintiff "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction." *Rossi*, 790 F.3d at 735. Indeed, "mere inactivity by police does not give rise to a constitutional claim." *Id.* In this case, Plaintiff may state a claim for denial of access to the courts with respect to a potential civil case against the alleged rapist only if the failure of the Merrillville Police Department to adequately investigate the crime "limited [her] ability to obtain legal redress to such a degree that it constituted a denial of judicial access." *Id*.

Defendants claim that Plaintiff has not made any allegations that the Merrillville Police Department engaged in active misbehavior, such as a coverup. Indeed, a close read of the

10

complaint shows that Plaintiff alleges the Police Department "did not take steps to properly investigate the allegation of forcible rape," Defendants "had a duty to investigate diligently the allegations and to submit the rape kit for testing" and they "fail[ed] to investigate and . ... submit the rape kit for testing and processing."  (Am. Compl. at 5.)

This case is different than *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984)(overruled on other grounds), finding there was a constitutional deprivation where there were allegations that the police department concealed and intentionally obscured facts.  As noted in *Bell*, that situation is "distinguishable from those where a plaintiff simply alleges that law officers were lax in their investigatory duties."  *Id.* at 1261-62.  Here, Plaintiff only alleges that the police department failed to properly conduct an investigation and failed to have the rape kit processed.  Mere inactivity, which is the only allegation in the amended complaint, is not enough.  *See Rossi*, 2015 WL 3827324, at *4.

Plaintiff does assert in her response memorandum, for the first time, that "[t]he officers covered something up, either a failure to investigate, improper training, or protecting the rapist.  This can be reasonably inferred from the length of time the police took to investigate this heinous crime and the miscommunication given to Ms. Walton about the investigation and processing of her rape kit."  (DE #24 at 2.)  However, "[i]t is a

basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (citing *Car Carrier, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  Moreover, Plaintiff has failed to articulate any facts in support of her theory that the officers covered something up, and the length of time of the investigation does not necessarily lend credence to a coverup theory.  This speculation is insufficient.

Additionally, the Supreme Court of the United States has "flatly rejected the notion there is a freestanding substantive due process right to access DNA evidence." *McDowell* v. Alvarez, No. 09 C 8033, 2012 WL 3481642, at *9 (N.D. Ill. Aug. 15, 2012) (citing *District Attorney's Office v. Osborne*, 557 U.S. 52, 72 (2009)). While such an interest has been recognized where prisoners sought to have forensic evidence tested in order to exonerate themselves and be released from prison, *see Osborne*, 557 U.S. at 72, no court has recognized a liberty or property interest in testing a rape kit to prove an unknown party's guilt.  The Supreme Court has held that there is no due process right to police investigation, criminal prosecution, or government aid, even "where such aid may be necessary to secure life, liberty, or property interests." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

For all of these reasons, Plaintiff has failed to state a

claim for violation of her constitutional rights, and Defendants are entitled to dismissal of Plaintiff's federal constitutional claims under 42 U.S.C. § 1983.

Equal Protection

Plaintiff also alleges that Defendants violated her right to equal protection because she was treated differently "based solely on her race and gender" and "[h]ad the report of assault been made by a Caucasian woman or a male, the allegations would have no doubt been investigated in an efficient and timely manner." (Am. Compl. ¶¶ 33-34.) Defendants move to dismiss this claim, arguing that the amended complaint fails to set forth any factual allegations that Caucasian or male rape victims were investigated differently. (DE #25 at 8.) Indeed, *Twombly* has established that plaintiffs must "state a claim to relief that is plausible on its face" and that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570, 555. But in response, Plaintiff points to *Brown v. Budz*, where the Seventh Circuit reversed dismissal, noting the liberal requirements of notice pleading under Rule 8. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Even assuming Plaintiff's allegations have sufficiently put Defendants on notice of her equal protection claim, the amended complaint still fails to state a claim.

"Local governments and their officials may be held responsible

under § 1983 only if the injury was caused by an official law, custom, or policy." *Heck v. Dearborn Cty. Jail*, 972 F.2d 351 n. 1 (7th Cir. 1992) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In order to demonstrate that a municipal policy has violated her civil rights under section 1983, Plaintiff must allege that:

> (1) the [municipality] had an express policy that, when enforced, causes a constitutional deprivation; (2) the [municipality] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000) (citation omitted).

Further, a municipality may only be liable under section 1983 if it is the "moving force behind the injury." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997). "The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017). In other words, to prevail on her claim, Plaintiff must ultimately demonstrate that her constitutional rights were violated and that the Department's policy or custom of failing to investigate certain alleged rapes

caused the constitutional violation. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 123 (1992).

While it is true that there is no heightened pleading standard for municipal liability under Section 1983, a complaint must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal*. Boilerplate allegations of municipal customs or policies are insufficient to state a *Monell* claim. *See Strauss v. City of Chicago*, 760 F.2d 765, 767-70 (7th Cir. 1985). To state a successful claim under *Monell*, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the [municipality] maintained a policy, custom, or practice that was the moving force behind the constitutional violations." *Dixon v. Buncich*, No. 2:15-CV-458 JD, 2016 WL 2643454, at *3 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Mere legal conclusions will not suffice to survive a motion to dismiss. *Id.; see also S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 857-58 (N.D. Ill. 2010). Further, one incident of an alleged constitutional violation is insufficient to show a municipal custom or policy, "the plaintiff must allege a specific pattern or series of incidents that support the general allegation." *Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986).

Here, Plaintiff alleges that the Merrillville Police Department "had policies set in place in accordance with the Lake

15

County Indiana Police Department and the Lake County Sexual Assault Response Team" and that they have a "widespread policy, practice, or custom of how to process a report of rape." (Am. Compl. ¶¶ 28, 32.) She does not specifically allege that the policy is unconstitutional, or that the policy gave rise to her injury. As pointed out by Defendants, if this was sufficient, every municipality would be automatically subject to liability merely for enacting policies and procedures, regardless of whether they were unconstitutional. Here, Plaintiff has failed to allege, much less point to any factual content, that the Department had a widespread custom or policy of failing to investigate alleged rapes of women or African Americans, which resulted in her injury.

Plaintiff confusingly argues that "[t]he complaint pleads that the Defendant Police department disregarded its own guidelines and instead used indifference and discouragement as a widespread policy, practice, and custom that causes its police officers, including the Chief, to slight the crimes reported by older, female or African American victims." (DE #24 at 6.) To the extent Plaintiff is arguing Defendants should be held liable because they failed to follow their own guidelines on rape investigation, "[a] local government's failure to follow its own procedural rules, however, does not violate due process." *Kvapil v. Chippewa Cnty., Wisconsin*, 752 F.3d 708, 715 (7th Cir. 2014) (citing *Scott v. Village of Kewaskum*, 786 F.2d 338, 342 (7th Cir. 1986)). And if

16

Plaintiff is trying to allege that Defendants had a custom or policy that caused harm, she has failed - she has not pled any factual content allowing the inference that a department policy violated her rights, or that there were other instances where the custom or policy violated another's rights. *See Strauss*, 760 F.2d at 767 ("Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present"); *see also Estate of Perry v. Wenzel*, Nos. 16-2353 and 16-3130, 2017 WL 4112409, at *15 (7th Cir. Jan. 5, 2017); *Cano v. Vasquez*, No. 2:16-cv-401, 2016 WL 7475658 (N.D. Ind. Dec. 29, 2016) (dismissing *Monell* claim where plaintiff only provided boilerplate allegations of a single incident). Finally, as set forth earlier in this opinion, the section 1983 claims further fail because Plaintiff has not set forth a constitutional injury. As such, Plaintiff has failed to set forth a claim for violation of her due process or equal protection rights.

State Law Claims

Plaintiff has also alleged state law claims for violation of the state Constitution (Count II), negligence (Count III), privacy (Count IV), and defamation (Count V). The Court has granted dismissal in favor of Defendants on all of Plaintiff's federal claims, which were the sole basis for federal jurisdiction in this action as the parties are not diverse. (Am. Compl. at 1.)

17

Therefore, the Court must decide whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Upon due consideration, the state law claims are dismissed without prejudice because the federal claims have been dismissed prior to trial. 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."); *see also Williams v. Fort Wayne Police Dep't Officers John/Jane Does*, No. 1:12-CV-202, 2012 WL 6727534, at *3 (N.D. Ind. Dec. 27, 2012).

CONCLUSION

For the reasons set forth above, the motion to dismiss (DE #17) is **GRANTED**. Plaintiff's federal claims (in Count I) are **DISMISSED WITH PREJUDICE**, and her state claims (Counts II-V) are **REMANDED** back to the Lake Circuit Court for further proceedings.

**DATED: November 28, 2017**     /s/ RUDY LOZANO, Judge
                                 **United States District Court**